The opinion of the court was delivered by
Tilghman, C. J.
This ease comes before the court on a petition of Edward Waters, administrator of Thomas Waters, deceased, for a mandamus to the president, managers, and company of the Berks and Dauphin turnpike road, commanding them to certify for the petitioner, to the state treasurer, with the proper duplicate, the amount due, with interest thereon, to the estate of the said Thomas Waters, deceased, from the said company.
The material facts are as follows: — At the time of the passing of the “ act for the improvement of the state,” (26th of March, 1821,) this turnpike company was indebted to Thomas Waters, for work done by him on the road. The road is about forty-one miles in length, of which about thirty-five were finished at the passing of the law, so that the company had a right, by virtue of the twenty-sixth section of the act, to draw from the state treasury immediately, the sum of eleven thousand, three hundred and ninety-five dollars, thirty-four cents, part of the sum of fourteen thousand dollars, which the governor was authorized to subscribe on behalf of the commonwealth, of the stock of the company. The balance of the fourteen thousand dollars could not be drawn, until the road was finished. By the same twenty-sixth section it was provided, that so much of the said fourteen thousand dollars as the company might be entitled to draw forthwith, should be applied to the payment of such of their debts, as the individuals who were directors of the company on the 1st of January, 1821, were personally liable for. And it appears that there were debts of that description, to the amount of the whole sum of eleven thousand, three hundred and ninety-five dollars, thirty-four cents, for which the company were entitled to draw immediately after the passing of the act. On that the petitioner does not t-o have *50 made any claim. But he says he has a right to receive payment out of the balance of the fourteen thousand dollars, which after-wards became due to the company. On the other hand, the managers of the company contend, that they have a right to apply that balance to the payment of other persons, by whose labours the remaining six miles of the road were made, after the passing of the act. This will depend on the construction of the seventy-seventh section of the act, by which it is enacted, “that it shall be the duty of the president and managers of the several turnpike road and bridge companies, to which roads'or bridges the governor is, by this act, authorized to subscribe for stock, before they, or any of them shall draw out of the state treasury, any part of the amount of the state’s subscription in this act authorized to be subscribed, to settle the accounts of all such persons, who may have heretofore performed work, labour, or service, and to whom they are indebted for work done, or contracts, on any part of the said turnpike roads or bridges, and who held the accounts in their own right, without having heretofore made a transfer thereof to any other person, and the amount due and payable to them respectively, shall be certified by the president, and attested by the treasurers respectively, under their corporate seal; a duplicate of each certificate shall be transmitted by the treasurer of such company, to the state treasurer, and the certificate given to each individual creditor, for labour performed as aforesaid, shall be received by the state ti'easurer, and shall be paid by him to the holder thereof, or to his order, and the amount to be paid shall be deducted by the state treasurer, from the appropriation made to the said turnpike road or bridge company. Provided, that if the certificates in possession of the creditors aforesaid of any company, thus presented to the state treasurer, shall exceed the total amount to be drawn, the same shall be paid pro rata.” There appears, at first view, to be some inconsistency between the twenty-sixth and seventy-seventh sections, because, if all the creditors for work done before the 26th of March, 1821, might demand their certificates, the preference given to certain debts for which the individual managers had become responsible, would be destroyed. But the construction is, that the seventy-seventh section, though general in its expressions, must be restrained, so as to embrace those cases only in which there were no special appropriation in preceding parts of the act. The legislature who made the appropriation of public money to various road and bridge companies, bad a right to do it on what terms they thought proper. And although one main object of the act was, to distribute the money impartially among those persons to whom the company had become indebted for work done before the passing of the law, yet it was judged right to make many exceptions to this general rule. In the case of this very company, for instance, it, was found that some of the managers had been so zealous and public spirited, as to make themselves personally responsible for *51 debts to a large amount, and it was thought just and politic, to encourage such spirit by indemnifying those persons who had promoted a great public object, at their own hazard. It will be seen, on an examination of this act, that various other preferences were given for various reasons. And we shall not wonder at this, when it is considered, that this act, by which a very large sum of public money was granted, for the improvement of the state, had many conflicting interests to encounter in the course of its passage. Its general intent was good, and its effects have been very beneficial. It is our part to construe it, so as to avoid, as far as possible, all inconsistency, and give operation to every part. It may appear to some persons, that in the case of roads which were unfinished, it would have been wise to make the appropriation in such manner as to ensure the completion of the road; and that would be best done, by leaving the old debts unpaid. In some instances, the appropriation was so made, but not in the case of the road now in question. And, whatever may be thought as to the policy of the measure, we cannot but praise the honesty of the feeling, which induced the legislature to make the payment of debts already contracted a prominent feature of the law. The construction of the seventy-seventh section was brought before the court, in the case of the commonwealth, at the instance of Duffy, against the president and managers of the Hanover and Carlisle turnpike road road company, (decided at Chambersburgh, October 26th, 1822, and not yet reported,) where it was fixed, upon the principles before mentioned, — that is to say, its general expressions were to be restrained, so as not to contradict prior specific appropriations. Upon that principle, the appropriation in the twenty-sixth section, in favour of individual managers who have made themselves responsible, is to be preserved inviolate. In all other respects, the general provision in the seventy-seventh section, in favour of debts contracted before the passing of the law, stands unimpaired. I am of opinion, therefore, that in this case a mandamus should issue; according to the prayer of this petition. There are several other eases before us, under precisely similar circumstances, in which, of course, the petitioners will be entitled to a mandamus.
Mandamus awarded.